212 N.J. Super. 48 (1986)
513 A.2d 967
IN RE MEDICAID LONG TERM CARE SERVICES BULLETIN 84-2; KING JAMES NURSING HOME OF FRANKLIN, A CORPORATION OF THE STATE OF NEW JERSEY.
IN RE N.J.A.C. 10:63-1.23; KING JAMES NURSING HOME OF FRANKLIN, A CORPORATION OF THE STATE OF NEW JERSEY.
Superior Court of New Jersey, Appellate Division.
Argued March 26, 1986.
Decided July 15, 1986.
*50 Before Judges FRITZ, GAYNOR and BAIME.
Steven Blader argued the cause for appellant (Szaferman, Lakind, Blumstein, Watter & Blader, attorneys; Arnold C. Lakind and Steven Blader, of counsel and on the brief).
Ivan J. Punchatz, Deputy Attorney General, argued the cause for respondent (W. Cary Edwards, Attorney General, *51 attorney; James J. Ciancia, Assistant Attorney General, of counsel; Ivan J. Punchatz on the brief).
The opinion of the court was delivered by GAYNOR, J.A.D.
This appeal concerns the challenge to a regulation adopted by the Department of Human Services, Division of Medical Assistance and Health Services (DMAHS), and the underlying bulletin, providing a revised policy for the calculation of reimbursable final per diem rates chargeable by long-term care facilities (LTCFs) under the Medicaid program.[1] The regulation, codified in N.J.A.C. 10:63-1.23, promulgated December 16, 1984, provided for the recovery by the Division from an LTCF when the final audited rate calculation is lower than the original prospective per diem rate previously established under the Cost Accounting and Rate Evaluation (CARE) system but did not allow for additional reimbursement to an LTCF when the final audited rate calculation is higher than the original per diem rate. Additionally, the regulation was made applicable to all current, pending or future audits for rate years beginning January 1, 1978.
In taking exception to the regulation, appellant,[2] King James Nursing Home of Franklin (King James), contends the regulation is ultra vires, violates federal and state Medicaid reimbursement schemes and, by its retroactive application, offends due process.
The Medicaid program, administered by DMAHS, is a jointly funded state-federal welfare program whose purpose is to *52 secure quality medical care for persons who could not otherwise afford the expense of such care. N.J.S.A. 30:4D-2; 42 U.S.C. § 1396. Qualified applicants for Medicaid must receive or be eligible to receive certain enumerated forms of categorical cash assistance. N.J.S.A. 30.4D-3(l). Medical assistance is made in the form of payments to participating health care providers on behalf of recipients rather than in the form of direct cash payments. N.J.S.A. 30:4D-3(g). The rates or schedules of fees to be paid to a health care provider under the Medicaid program are established by the Commissioner of Human Services. N.J.S.A. 30:4D-7.
In the area of long-term care, reimbursement to LTCFs for services rendered to Medicaid patients in New Jersey is governed by the CARE guidelines codified at N.J.A.C. 10:63-1 et seq. The CARE system establishes prospective per diem rates for services rendered by a LTCF based upon the actual costs reported by the facility after the close of its fiscal year. A rate is struck which is either a statistically "reasonable" rate based upon a method of peer comparison within discrete categories or the facility's actual costs, whichever is lower. The prospective rate[3] is effective for a one-year period beginning six months after the close of the base period during which the costs are incurred. N.J.A.C. 10:63-3.1. Administrative appeals from the rates established are routinely permitted for situations peculiar to a facility which may result in inequities. N.J.A.C. 10:63-3.20. The appeals are first considered by agency analysts and, if continued, by an administrative law judge. Ibid. Furthermore, *53 the per diem rates are not subject to routine retroactive adjustments except for matters as specified in the regulations and are also subject to on-site audit verification of costs and statistics reported by the LTCF.
As discussed in detail by the Supreme Court in Bergen Pines County Hosp. v. Department of Human Services, 96 N.J. 456, 461-465 (1984), the CARE system of long-term care reimbursement which became effective January 1, 1978 constituted New Jersey's response to the former federal mandate for reimbursement to participating facilities on a "reasonable cost related basis." 42 U.S.C. § 1396a(a)(13)(A) (1972). Since October 1, 1980, the federal statute has required that reimbursement be paid at rates which the State finds are reasonable and adequate by efficiently and economically operated facilities. 42 U.S.C. 1396a(a)(13) (1980). Under both of these criteria, the CARE system has been utilized by DMAHS to set the rates of reimbursement for LTCFs with federal approval. Bergen Pines, supra at 479-480.
Under the CARE system, the facilities are permitted to challenge the rate or demonstrate that an error in the rate is the result of a miscomputation by the agency. If the appeal is timely any resulting upward adjustment is effective retroactive to the first day of the reimbursement period. If the appeal is untimely but the challenge meritorious, any upward adjustment is effective on the first of the month following the date of the appeal. N.J.A.C. 10:63-3.20(a)iv.(1) and (2). In addition, at any time beginning with the filing of the cost reports by the facility (90 days after the close of the facility's fiscal year and 90 days prior to the prospective reimbursement period) through the reimbursement period (15 months in total), the facility may apply to the agency to adjust its base year costs.
In accordance with prior practice, the auditing procedure previously resulted in findings of overpayments to be recovered by DMAHS or underpayments due the facilities, with the corresponding right to an administrative appeal. In 1982, the *54 DMAHS officials charged with the responsibility of establishing the long-term care rates noted that the recognition of an increase in the rate after audit was inconsistent with the CARE system of prospective rates, with its extensive established appeal mechanism at the time of the initial cost filing and rate setting. It was concluded that such a procedure was unfair to those facilities which complied with the appeal process and further that payment of upward adjustments from the current year's appropriation created havoc because of the inability to budget those costs. Accordingly, DMAHS issued "Medicaid Long-Term Care Services Bulletin 82-6" (Bulletin 82-6) to all participating LTCFs explaining that the auditing was not designed to identify or reopen reporting errors made by the facilities but rather to determine whether the reported costs and statistics which were the basis for the prospective reimbursement rates were allowable in accordance with CARE guidelines and could be substantiated. Accordingly, it was proposed in the bulletin that
[r]eporting errors discovered during the audit process which would have resulted in a higher per diem rate and which were not appealed with the original rate calculation will not be recognized for adjustment purposes when final audited rates are determined. Settlement after audit will be for fraud and/or abuse collections or recoveries of payments and any applicable penalties when the final rate is lower than the original rate. This means that except for highly unusual circumstances, final rates calculated after audit will not exceed those rates that have been previously approved and implemented through the CARE process.
Rates for virtually all of the participating facilities for reimbursement periods after January 1, 1978 were calculated after audit in accordance with Bulletin 82-6, at least to the extent that the prospective rate constituted the upper limit on the amounts due the facilities. As a result of a challenge by the New Jersey Association of Health Care Facilities, Bulletin 82-6 was modified by the issuance of "Medicaid Long-Term Care Services Bulletin 84-2" (Bulletin 84-2). The modification consisted of allowing adjustments in favor of the facility for previously reported classified costs. Bulletin 84-2 was embodied in N.J.A.C. 10:63-1.23, the regulation now being challenged.
*55 Before N.J.A.C. 10:63-1.23 was promulgated in December 1984 the Director of DMAHS and the Commissioner of Human Services considered the impact of eliminating all audit adjustments favorable to LTCFs. While such a procedure was considered fiscally sound, it was concluded that the resulting potential problems warranted the allowance of adjustments, upward or downward, for any reported allowable cost subject, however, to the cap on the redetermined rate being the amount previously paid. It was also determined that the policy should be applied to all per diem audits awaiting final determination. The regulation as adopted thus provided:
10:63-1.23 Final audited rate calculation
(a) The Division of Medical Assistance and Health Services will calculate final per diem rates based on audit adjustment reports in accordance with the following general guidelines:
1. Allowance of audit adjustments which represent the reclassification of previously reported allowable cost and statistics;
2. Disallowance of audit adjustments which represent previously unreported costs; and
3. The final per diem rates determined based on 1 and 2 above cannot exceed the prospective rates previously paid.
(b) Settlement after final rate calculation will be for fraud and/or abuse collections or recoveries of payments when the final rate is lower than the original rate.
(c) The basis for establishing guidelines for the prospective per diem rates, and costs which may be reported, are the CARE (Cost Accounting and Rate Evaluation System) Guidelines which appear at N.J.A.C. 10:63-3.
(d) This section applies to all current, pending or future audits for rate years beginning January 1, 1978.
In response to objections to the regulation, DMAHS outlined the underlying reasons justifying the limitation on reimbursement as follows:
The final rate is struck at the time of rate setting, and is based on a cost report which is prepared by the LTCF [Long Term Care Facility]. The information entered on the cost report is based on financial data that is uniquely within the control of the LTCF. Therefore, the Division believes that it is the responsibility of the LTCF to correctly and accurately report the data. In addition, if the LTCF objects to the rate that is struck, they may invoke the appeals process contained in N.J.A.C. 10:63-3.20.
The purposes of the subsequent audit, which is required by federal regulations (42 CFR 447.253(d)), is to assure the facility has not received an overpayment *56 in excess of the amount authorized under law. [16 N.J.R. 3436 (December 17, 1984).]
A principal goal of prospective rate-setting is cost containment. It is intended to promote efficiency in the operation of LTCFs. See Birnbaum, et al., Public Pricing of Nursing Home Care. The facility is forced to stay within the predetermined rate or absorb any cost overruns. An additional advantage is that it permits the state agency to budget its funds more effectively rather than waiting until the year end and then adjusting rates retrospectively. Although the prospective methodology has been criticized as putting the squeeze on LTCFs and possibly causing facilities to cut services or withdraw from the Medicaid program because of unreasonably low rates, the adoption of some form of prospective payment system has been noted as "the most pervasive state change in nursing home reimbursement." U.S. Department of Health and Human Services, State Initiatives in Long-Term Care: Report of a Survey of 32 States (August 1984). Another study shows that 39 states now use prospective rate-setting for the reimbursement of intermediate care under the Medicaid program. Buchanan & Minor, Legal Aspects of Health Care Reimbursement (1985).
In support of its claim that the regulation is ultra vires, appellant initially argues that N.J.S.A. 30:4D-7.m requires the retroactive adjustment of rates for LTCFs. That provision, in pertinent part, authorizes the commissioner
[t]o pay or credit to a provider any net amount found by final audit as defined by regulation to be owing to the provider. Such payment, if it is not made within 45 days of the final audit, shall include interest on the amount due at the maximum legal rate in effect on the date the payment became due, except that such interest shall not be paid on any obligation for the period preceding September 15, 1976. This subsection shall not apply until Federal financial participation is available for such interest payments.
While this statute contemplates retrospective payments to health care facilities, it does not require them. The statute uses the term "authorized and empowered," not "required," an indication that the Legislature intended such payments to be *57 subject to the discretion of the commissioner. While the commissioner has the option of adjusting rates retrospectively, in the exercise of his discretion, he may deem it unwise or financially unsound to do so. The argument made by appellant overlooks the wide discretion accorded the commissioner in this respect by the Medical Assistance and Health Services Act, N.J.S.A. 30:4D-1 et seq.
Appellant further contends the regulation is contrary to 42 U.S.C. § 1396(a)(13)(A) in that it operates to deny a facility its entitlement to be compensated by rates which are "reasonable and adequate." Assertedly, compliance with this statutory language requires that the facility be reimbursed if a final audit results in an upward adjustment, irrespective of any errors appearing in its cost report. Stated differently, appellant argues that while reimbursement can be denied if the costs incurred by the LTCF are unreasonable, payment should not be withheld if the upward adjustment in rate results merely from the inclusion of financial data inadvertently omitted from its initial report. We perceive no such inconsistency between the challenged regulation and this statutory directive. The regulation provides for the setting of the per diem rate on the basis of cost reports submitted by the facility. Further, the appeal process permits the correction of inaccurate cost reporting during a 15-month period following the setting of a rate. Moreover, reclassification of reported costs is permitted during the final audit, with the one limitation that the final rate not exceed the prospective rates previously paid. In our view, any rate so calculated and adjusted must be considered "reasonable and adequate."
Furthermore, the substantial deference which must be accorded the agency's determinations concerning the reimbursement rates of health care facilities, see Bergen Pines, supra at 478 compels our validation of N.J.A.C. 10:63-1.23. Agency rules, which are accorded a presumption of validity, can be overturned only if they are found to be arbitrary, capricious, *58 unreasonable or irrational. Id. at 477. We note that the challenged regulation is the product of some two years of agency consideration, having been refined in two Medicaid Bulletins, subjected to public review and comment and ultimately promulgated as an administrative regulation.[4] Its purpose, in keeping with the philosophy of prospective rate-setting, is one of cost containment and, in this respect, evidences a concern for the efficient use of limited funds. It also reflects the various amendments to the federal Medicaid statute which have encouraged states to experiment with different reimbursement mechanisms and is in furtherance of the commissioner's statutory duty to obtain maximum use from federal funds. N.J.S.A. 30:4D-7. Although the application of N.J.A.C. 10:63-1.23 may seem heavy-handed in some cases, it certainly cannot be deemed arbitrary or capricious. The commissioner has given due consideration to the issue and determined that the public interest is served best by a prohibition on the upward adjustment of prospective rates calculated according to figures submitted by the LTCFs themselves. We are satisfied the regulation and its reflected policy does not offend the statutory scheme.
Other courts, addressing the reimbursement systems of other states, have reached similar conclusions. See Mississippi Hosp. Ass'n, Inc. v. Heckler, 701 F.2d 511 (5 Cir.1983) (upholding a state plan that put a ceiling on the reimbursement of operating costs, the "obvious purpose of [which] is to encourage cost containment by penalizing the most expensive hospitals"); Troutman v. Cohen, 588 F. Supp. 590 (E.D.Pa. 1984) (ruling, in the context of an application for preliminary injunctive relief, that Pennsylvania's imposition of a ceiling on the reimbursement of certain nursing care costs was not arbitrary or capricious), aff'd 755 F.2d 924 (3 Cir.1984); Coalition of *59 Mich. Nursing Homes, Inc. v. Dempsey, 537 F. Supp. 451 (E.D.Mich. 1982) (application for preliminary injunction, the court denying relief and finding state's reduction in the "profit factor" of LTCFs presumptively valid); Illinois Council for Long Term Care v. Miller, 503 F. Supp. 1091 (N.D.Ill. 1980) (finding that state's cap on the reimbursement of capital costs "represents a reasonable accommodation of the competing interests Congress sought to balance" under Medicaid statute); American Health Care Ass'n, Inc. v. Califano, 443 F. Supp. 612 (D.C. 1977) ("We are unpersuaded by plaintiff's protestations that a reimbursement ceiling contradicts congressional desires to provide states maximum flexibility in establishing reimbursement schemes."); Haven Home Inc. v. Department of Public Welfare, 216 Neb. 731, 346 N.W.2d 225 (1984) (to the same effect as the decisions cited above).
Appellant's further contention that the retroactive application of the questioned regulation to "all current, pending or future audits for rate years beginning January 1, 1978" violates due process, in that it upsets the settled expectations of LTCFs, is unpersuasive.
It is fundamental that not all retrospective enactments are unconstitutional. Rothman v. Rothman, 65 N.J. 219, 225 (1974). Or, "that legislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations." Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 16, 96 S.Ct. 2882, 2892, 19 L.Ed.2d 752 (1976). The controlling consideration is "the importance of the public interest served by the statute and comparing it with and balancing it against the quality and value of the right affected by the retroactive legislation." Rothman v. Rothman, supra 65 N.J. at 226. See also Sorensen v. Taxation Div. Director, 184 N.J. Super. 393, 401 (Tax Ct. 1981).
We are satisfied that such a balancing of the public interest served by N.J.A.C. 10:63-1.23 against the settled expectations of the LTCFs affected by its retroactive application favors the *60 regulation and compels the conclusion that its implementation does not infringe upon due process rights. The justifications for prospective rate-setting, which have been noted, reflect the strong interest of the State in maintaining the financial integrity of the Medicaid program and administering it efficiently with maximum use of the available funds. We recognize that the expectations of some LTCFs may be upset by the retroactive application of the regulation. However, the facilities in this position are those which failed either to report their costs accurately or to seek timely appellate review. Moreover, as N.J.A.C. 10:63-1.23 permits the establishment of rates which are "reasonable and adequate," thereby enabling the LTCFs to receive all they are entitled to, there can be nothing constitutionally offensive about the retroactive application of the regulation.
Courts have permitted retroactive application of Medicaid regulations, and their approach is typified by the following excerpt from Dept. of Social Services v. Villa Capri Homes, 684 S.W.2d 327 (Mo.Sup.Ct. 1985):
Nursing homes participating in programs such as the Medicaid program operate at a risk. Their ability to obtain funds depends upon the federal government's willingness to continue the program. The amount of funds they obtain is also dependent upon changing federal guidelines, such as the switch to a "reasonable cost related basis." Cf. Edgewater Nursing Center, Inc. v. Miller, 678 F.2d 716, 717-18 (7th Cir.1982). On the state level, the nursing homes rely upon the State's continuing participating in the program.
Id. at 332 (upholding retroactive application of state Medicaid regulation over objection of nursing homes that reimbursement rates should have been calculated according to an earlier "informal agreement" covering the relevant period) (footnote omitted). See also State ex rel. Shady Acres Nur. Home v. Rhodes, 7 Ohio St.3d 7, 455 N.E.2d 489 (Ohio Sup.Ct. 1983); cf. Beth Israel Hosp. v. Heckler, 560 F. Supp. 1222, 1227-1228 (D.N.J. 1983).
We therefore conclude that N.J.A.C. 10:63-1.23 constitutes a valid exercise of the commissioner's statutory discretion to administer the Medicaid program, is in harmony with the legislative *61 history of the federal Medicaid statute, serves the public interest and represents a rational choice of the state agency charged with administering a program of limited resources.
The consolidated appeals are therefore dismissed.
NOTES
[1] The appeal from the issuance of the bulletin captioned Medicaid Long Term Care Service Bulletin 84-2 was filed on March 8, 1984 and the appeal from the promulgation of the regulation was filed on January 30, 1985. By order dated May 6, 1985 these appeals were consolidated.
[2] As the order granting appellant's motion to add other parties was conditioned upon their being represented by the attorney for King James, appellant will be referred to in the singular.
[3] The United States Department of Health and Human Services has defined a prospective rate as follows:

A payment rate set prospectively is a rate set for an accounting period entirely on the basis of cost reports of provider facilities and other cost data for earlier accounting periods, and on economic forecasts available before the beginning of the accounting period for which the rate is paid. [Supplemental Statement, 43 F.R. 4861 (Feb. 6, 1978) reported at CCH, Medicare and Medicaid Guide, New Developments, ¶ 28, 835, p. 9184 (February 1978).]
[4] It also is noted that the regulation was a modification of the policy proposed in Bulletin 82-6 resulting from the settlement of the litigation instituted by the New Jersey Association of Health Care Facilities.