222 N.J. Super. 357 (1988)
536 A.2d 1306
OFFICE OF INMATE ADVOCACY, APPELLANT,
v.
WILLIAM H. FAUVER, COMMISSIONER, DEPARTMENT OF CORRECTIONS, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 5, 1988.
Decided February 1, 1988.
*358 Before Judges SHEBELL, GAYNOR and ARNOLD M. STEIN.
Nancy Feldman, Assistant Deputy Public Defender, argued the cause for appellant (Alfred A. Slocum, Public Defender, attorney; Nancy Feldman, of counsel and on the brief).
Jeffrey A. Bartolino, Deputy Attorney General, argued the cause for respondent (W. Cary Edwards, Attorney General, attorney; Michael R. Clancy, Deputy Attorney General, of counsel; Jeffrey A. Bartolino, on the brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
The Office of Inmate Advocacy (OIA) appeals the July 1986 Department of Corrections (DOC) adoption of amendments to the regulations governing medical screening of new inmates in county jails which abandoned the provision in the former regulations that all inmates be tested for infectious diseases. The new regulations provide for testing at the discretion of the county jail's physician.
On October 7, 1985, the DOC proposed an amendment to N.J.A.C. 10A:31-3.12 and 10A:31-3.15. 17 N.J.R. 2343 (1985). The OIA requested a public hearing on the proposal. The *359 Department heard testimony on January 21, 1986, and received written comments and documentation. The amendments were adopted on May 29, 1986 without modification of the proposal to eliminate testing for infectious diseases; they took effect on July 7, 1986. 18 N.J.R. 1384 (1986).
The OIA argues that the elimination of what it terms "routine, mandatory testing" violates a prisoner's "fundamental right," under the federal and state constitutions, to protection from disease, and that the new regulation should be overturned as arbitrary, capricious, unreasonable, and contrary to public policy and legislative intent.
Formerly, N.J.A.C. 10A:31-3.12(b)1.iv required that new inmates of county jails have "[m]edical screening, including tests for infectious diseases." Under the amendment the regulation was revised to require "[m]edical screening as detailed in N.J.A.C. 10A:31-3.15 Medical, dental and health service care." In turn, the first paragraph of N.J.A.C. 10A:31-3.15(b)11 was changed to read:
11. Upon admission, all inmates shall receive medical screening by a nurse or medical technician, and a physical examination by a licensed medical doctor, and any tests determined to be necessary by the facility's responsible physician. The medical screening and physical examination shall be performed on all inmates prior to their placement in the general population or housing area. The findings shall be recorded on a printed screening form approved by the responsible physician. [Emphasis supplied].
The new regulation requires medical examination by a physician, where none was required before, but leaves to the doctor's discretion whether to order tests for disease. The prior regulation mandated testing for all incoming inmates but did not specifically enumerate the infectious diseases for which testing was required.
The DOC rejected the premise of the objectors that the new regulation would end all testing for infectious diseases: "The Department does not believe that counties will cease testing for infectious disease where such tests are appropriate and are recommended by the responsible county physician." 18 N.J.R. 1385 (1986). The Department conceded that mandatory testing *360 was "desirable," but determined "that differences in populations, facilities and resources require that some latitude be given each county to develop its policy according to its individual needs." It preferred "to defer to the expertise of local county physicians regarding specific needs" for testing. We have no doubt that in the absence of specific enumeration of the infectious diseases to be tested for in the earlier regulation that local discretion and conditions dictated what testing was to be routinely carried out.
OIA attacks the amendments on constitutional grounds, alleging that inmates' rights to mandatory testing for venereal disease and tuberculosis are so "fundamental" as to require that any restriction on those rights be justified by a greater showing of governmental need than would be applicable to a less intrusive health regulation. It also invokes the Eighth Amendment prohibition against cruel and unusual punishment, and Article I, Paragraph 1 of the New Jersey Constitution (the right to enjoy life and liberty and to pursue and obtain safety and happiness).
The test for the constitutional level of prison medical care, under the Eighth and Fourteenth Amendments, was announced in Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251, 261 (1976) as being whether there were "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." The cases interpreting Estelle have identified two categories of "deliberate indifference": (1) denial of or delay in access to diagnosis and treatment of conditions causing discomfort, or (2) denial of prescribed treatment. See, e.g., Dean v. Coughlin, 623 F. Supp. 392, 401 (S.D.N.Y. 1985); Todaro v. Ward, 431 F. Supp. 1129, 1132-33 (S.D.N.Y. 1977), aff'd 565 F.2d 48 (2d Cir.1977).
Not every action affecting prisoners' health implicates the Eighth Amendment: ordinary negligence will not qualify; there must be wanton and unnecessary infliction of pain, Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251, 260-61 (1986), or indifference to "serious" medical *361 needs. Pace v. Fauver, 479 F. Supp. 456, 458 (D.N.J. 1979), aff'd without opinion 649 F.2d 860 (3d Cir.1981). "Serious medical need" has been defined by New Jersey's Federal District Court "as one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Id. at 458.
No cases have been found which hold that the kind of pre-admission testing sought by OIA in this case is constitutionally required. In Lareau v. Manson, 651 F.2d 96 (2d Cir.1981), a class of inmates brought an action under 42 U.S.C.A. § 1983 alleging that overcrowded prison conditions violated their Eighth and Fourteenth Amendment rights. Among their complaints was that incoming prisoners were not screened for communicable diseases. The Court of Appeals upheld the finding of the District Court that the resulting threat to the inmate population was so serious as to constitute punishment without due process under the Fourteenth Amendment, and cruel and unusual punishment under the Eighth Amendment (citing the Estelle standard). Id. at 109. As part of its remedy the Court ordered that inmates be examined within 48 hours of their admission, which examinations "shall include such tests as are necessary in the opinion of the physician to identify and isolate those who have communicable diseases." Id. at 111. The regulation under attack here does require a medical examination by a physician upon admission, and it calls for tests if deemed necessary by the physician. This was the remedy selected by the Lareau Court.
In Cody v. Hillard, 599 F. Supp. 1025 (D.S.D. 1984), aff'd 799 F.2d 447 (8th Cir.1986), reh. granted 804 F.2d 440 (8th Cir.1986), inmates challenged a medical screening program as being constitutionally inadequate. The Court agreed, noting that intake examinations were done by corrections officers without medical training; there was no formal medical-screening procedure, and examinations were done up to two weeks after admission. 599 F. Supp. at 1044. The absence of adequate and timely medical *362 screening was thus found to be a constitutional deprivation under Estelle and Lareau, among others. Id. at 1059.
There has been no proof that the lack of mandatory tests for venereal disease and tuberculosis has resulted in, or is likely to result in, "medically significant consequences." The new regulation is intended to heighten the counties' responsibilities with regard to medical screening. The old regulation did not require screening by trained personnel or physical exams by physicians. Since each physician retains the discretion to order tests, it must be presumed that the physician will exercise that discretion if good medical practice dictates it is warranted. If experience should show that the new regulation fails to protect inmates, then OIA may assert a challenge based on the demonstrated impact of the regulation on inmates' medical care. Until some adverse effect can be proven, it would be speculative and premature to say that, on its face, the regulation's failure to require routine testing denies inmates their constitutional rights.
OIA also argues that inmates have a right under Article I, Paragraph 1 of the New Jersey Constitution to protect their bodies against contagious disease. In Right to Choose v. Byrne, 91 N.J. 287, 303 (1982), the Court declined to recognize "a fundamental right to health," although it did acknowledge that this State "accords a high priority to the preservation of health." Id. at 304. Despite the fact that Byrne denied "fundamental right" status to inmates' interest in their health, OIA seeks to apply the "balancing test" governing such rights. However, a fundamental right not having been established, the "balancing test" for assessing restrictions on fundamental rights is inapplicable.
OIA urges that even if we reject its constitutional attack, the new regulations may be overturned under the traditional standard of review of an administrative regulation, i.e., whether it is arbitrary, capricious, unreasonable, or lacking a rational basis. See, e.g., Bergen Pines Hosp. v. Dept. of Human Serv., 96 N.J. 456, 477 (1984). Regulations are presumed *363 valid; their attacker bears the burden of overcoming this presumption. Ibid. This burden may be met by showing that the regulation contravenes the public interest or legislative intent, or that it represents an irrational "choice by the state agency charged with administering a program of limited resources." In re Medicaid Long Term Care Serv. Bulletin, 212 N.J. Super. 48, 60-61 (App.Div.), certif. den. 107 N.J. 31 (1986).
"If a reasonable difference of opinion from the facts, real or presumed, exists, the administrative decision [in enacting a regulation] will not be disturbed, ...." Schwerman Trucking v. Dept. of Env. Protection, 125 N.J. Super. 14, 19 (App.Div. 1973) (emphasis in original). This court allows the agency the benefit of any doubt. Ibid. In order to uphold a regulation, we need not be convinced that the regulation decrees the most effective remedy. Rather, it is sufficient that it have a rational basis. We are satisfied that there is a sufficient rational basis for the amended regulations in question based upon our review of the record and considering the statutory duty of the DOC.
We uphold the July 1986 amendments to N.J.A.C. 10A:31-3.12(b)1.iv and 10A:31-3.15(b)11.