606 A.2d 1160

STATE OF NEW JERSEY, PLAINTIFF, v. J.E., DEFENDANT.

Superior Court of New Jersey
Law Division (Criminal)
Hudson County

Decided March 23, 1992.

*Eileen Kenna,* Asst. Hudson County Prosecutor, for the plaintiff (*Carmen Messano,* Hudson County Prosecutor).

*Mark Lunger,* for the defendant (*Mayer L. Winograd,* Hudson County Public Defender).

## OPINION

COSTELLO, J.S.C.

The State has moved before this court for an order permitting the State to obtain any and all medical records from The Harbor, a drug abuse clinic, regarding the testing for the presence of AIDS (Acquired Immune Deficiency Syndrome) and other related illnesses in the defendant. The State has also moved for the release of any records in the possession of the warden of the Hudson County Jail on this same subject. The defense opposes both motions. The Hudson County Counsel, appearing on behalf of the warden, takes no position.

On February 21, 1991 the defendant was arrested and later indicted for two counts of kidnapping in violation of *N.J.S.A.* 2C:13–1b and two counts of aggravated sexual assault, in violation of *N.J.S.A.* 2C:14–2a(3), all first degree offenses. The crimes allegedly occurred on January 25, 1991 and January 27, 1991 and involved two victims, C.R. and M.B. respectively.

The defendant posted bail and was released on March 1, 1991. On June 27, 1991 he entered into a drug rehabilitation program at The Harbor in Hoboken, N.J. On October 21, 1991 a warrant for his arrest issued due to his failure to appear in Superior Court on these charges. He was arrested on the warrant on November 17, 1991 and has remained in the Hudson County Jail since that time awaiting trial. Presumably since that time medical records have been generated in the jail which would confirm or rule out the presence of AIDS.

Regardless of the merits of the State's application, there is one preliminary hurdle which must be met regarding the records from The Harbor. *N.J.S.A.* 26:5C–9(d) states:

The Court shall deny any application for disclosure of a person's record unless the Court makes a specific finding that the program was afforded the opportunity to be represented at the hearing. A program operated by a Federal, State or Local Government Agency or Department shall be represented at the hearing.

Since The Harbor was not notified of this motion, that part of the State's application that relates to this program's records is denied.

The State has filed an affidavit from an assistant prosecutor in support of its motion which states that in October of 1991, a Hudson County probation officer advised the Hudson County prosecutor's office that the defendant (one of his probationers) had tested positive for the HIV virus while enrolled in The Harbor drug program. Since defendant is charged with committing acts of sexual penetration against C.R. and M.B., the State theorizes that it is possible that C.R. and M.B. have been infected with the HIV virus from defendant. For the above reasons the State asks for the release of the blood test results "... so that it may inform C.R. and M.B. of the results."

The applicable statute for the release of AIDS records is *N.J.S.A.* 26:5C–5 *et seq.* The purpose of the statute is ".... to protect the confidentiality of individual AIDS records while assuming their limited availability for essential health, scientific and other legitimate purposes." *Snyder v. Mekhjian,* 244 *N.J.Super.* 281, 295, 582 *A.*2d 307 (App.Div.1990), aff'd, 125 *N.J.* 328, 593 *A.*2d 318 (1991). Although the State's papers do not rely on any specific subsection there are several methods through which records can be disclosed under *N.J.S.A.* 26:5C–5 *et seq.*

The defendant in this case has refused to consent to the release of the records so *N.J.S.A.* 26:5C–8(a) is not relevant. *N.J.S.A.* 26:5C–9 sets out the two situations in which a court may order disclosure of test results without the consent of the defendant. First, under *N.J.S.A.* 26:5C–9(b):

A court may authorize disclosure of a person's record *for the purpose of conducting an investigation of or a prosecution for a crime of which the person is suspected,* only if the crime is of a first degree crime and there is a

reasonable likelihood that the record in question will disclose material information or evidence of substantial value in connection with the investigation or prosecution (emphasis added).

As stated in the supporting affidavit, the State's sole purpose in seeking this information is so that the victims can be informed of the fact that they may have contracted the HIV virus. There has been no claim by the State that the information sought is needed to investigate or prosecute the defendant. Indeed he has already been indicted and with the exception of this motion and a pending defense motion to sever, both sides are ready for trial. In spite of the State's claim at oral argument of reliance on this section, there is no basis to grant relief under § 9(b)[1].

Second, *N.J.S.A.* 26:5C–9(a) provides that records "…. may be disclosed by an order of a court of competent jurisdiction which is granted pursuant to an application showing good cause therefor". The statute also outlines factors are to be considered at a good cause hearing:

…. the Court shall weigh the public interest and need for disclosure against the injury to the person who is the subject of the record, to the physician-patient relationship, and to the sevices offered by the program. *N.J.S.A.* 26:5C

There is a strong, even compelling general public interest in preventing the spreading of AIDS and in encouraging those infected to seek treatment. There is also a specific public interest in preserving the health of a rape victim and her sexual partners. Those two public interests are clearly in conflict here, because if confidentiality of AIDS records is not maintained, inmates may elect not to report their HIV status to correctional authorities.[2] *Cf. In the Matter of Rules Adoption*

---

[1]Parenthetically, three states have recently enacted legislation compelling AIDS testing for rape suspects. Two of these three statutory schemes provide that the test results may not be used against the suspect in any criminal prosecution. Bedward, "Aids Testing of Rape Suspects: Have the Rights of the Accused Met Their Match?", 1990 *U. of Ill.L.Rev.* 347, 358–359, n. 102–103.

[2]*See* concerns addressed in *Roe v. Fauver,* United States District Court (D.N.J.1992), CA No 88–1225 Consent Degree signed by the New Jersey Attor-

*Regarding Inmate–Therapist Confidentiality,* 224 *N.J.Super.* 252, 540 *A.*2d 212 (App.Div.1988). This reluctance to seek treatment and counselling can logically result in the disease being spread further either within an institution or beyond.[3]

The emotional appeal of a request to quell the fears of a rape victim is undeniable. Individual victims and the lay public will surely be frustrated by any analysis which balances the rights of a suspect against those of a victim.[4] But, by valuing the public interest in a small number of identifiable rape victims over the public interest in the larger anonymous population, the effect may very well be to do more harm to a greater number.

The need for disclosure must be evaluated: is it as compelling as the State indicates in its affidavit? The crimes here are alleged to have occurred on January 25, 1991 and January 27, 1991. In October of 1991, more than eight months later, a Hudson County probation officer gave the prosecutor's office the information which is the basis for this motion. This is significant because the period of time between infection and the appearance of HIV antibodies creates a two-to-six month "window period" in which an infected person may still test negative for the virus. *Snyder v. Mekhjian,* 125 *N.J.* at 332, 593 *A.*2d 318. *See also* Note, "Mandatory HIV Testing of Rape Defen-

---

ney General and the New Jersey Public Advocate regarding the state prison inmates with AIDS, specifically para. C21–22: "HIV tests shall be recommended to all inmates where suggested by clinical indications or indications of past behavior exposing the inmate to the risk of infection ... Testing for HIV shall be voluntary and confidential." It is interesting to contrast this position with that taken in *Office of Inmate Advocacy v. Fauver,* 222 *N.J.Super.* 357, 536 *A.*2d 1306 (App.Div.1988), wherein the Public Defender unsuccessfully sought to ensure that all inmates receive mandatory screening for tuberculosis and venereal disease.

[3]See Gostin, "Hospitals, Health Care Professionals, and AIDS" 48 *Maryland Law Rev.* 12, 47 (1989).

[4]See concerns voiced in Note, "AIDS, Rape, and the Fourth Amendment: Schemes for Mandatory AIDS Testing of Sex Offenders", 43 *Vanderbilt Law Review,* 1607, 1630 (1990).

dants: Constitutional Rights are Sacrificed in a Vain Attempt to Assist the Victim", 94 *W.Va.L.Rev.* 179, 181 (1991). Therefore, taking into account the fact that the earliest the State had its information was two months after the "window" had closed then the public's need for the information is considerably decreased, since the victims can now have themselves tested to see if they have contracted the HIV virus. Indeed, this is presumably the same action the alleged victims will take even if the court orders disclosure of records confirming the State's supposition that the defendant has AIDS.

The above must then be balanced first against the injury to the person who is the subject of the record. In this case J. E. is currently lodged in the Hudson County jail. This is not a setting where the information to be disclosed could have some negative affect on his standing in the social community (i.e. loss of employment, damage to family relationships. etc.) Defense counsel cannot be allowed to speculate that there will be some negative impact on his standing within the jail community, because if the results were released they would only be released to the State and the victims.[5]

The next countervailing factor to consider is the effect disclosure will have on the physician-patient relationship. It should be noted that none of the counsel involved gives any more than passing mention to this factor.

New Jersey has a long tradition of honoring the physician-patient privilege. *Estate of Behringer v. Princeton Medical Center,* 249 *N.J.Super.* 597, 632, 592 *A.*2d 1251 (Law Div.1991). Ordinarily an exception to this rule occurs when third parties have been or may be exposed to infectious conditions. In those cases, a physician may have a duty to warn those third parties they are at risk. *Estate of Behringer, supra; Earle v. Kuklo,*

---

[5] For concerns raised about the health and safety of other inmates who may engage in sexual practices with an already infected prisoner, see Parts, "The Eighth Amendment and the Requirement of Active Measures to Prevent the Spread of AIDS in Prisons", 22 *Columbia Human Rights L.Rev.* 217 (1991).

26 *N.J.Super.* 471, 98 *A.*2d 107 (App.Div.1953); *McIntosh v. Milano,* 168 *N.J.Super.* 466, 403 *A.*2d 500 (Law Div.1979). Historically, the contagious diseases referred to have been tuberculosis and venereal diseases. AIDS has now joined the list. *See* Hermann, "Aids, Therapeutic Confidentiality and Warning Third Parties", 48 *Maryland L.Rev.* 55 (1989), Comment, "Doctor–Patient Confidentiality Versus Duty to Warn in the Context of Aids Patients and their Partners", 47 *Maryland L.Rev.* 626 (1988), and Note, "Between a Rock and a Hard Place: AIDS and the Conflicting Physician's Duties of Preventing Disease Transmission and Safeguarding Confidentiality", 76 *Georgetown Law Journal* 169 (1987). In New Jersey, even this duty to warn third parties has been abrogated in the case of AIDS by *N.J.S.A.* 26:5C–5 *et seq.* To that extent the passage of this statute strengthens the already firm policy in this State of honoring the physician-patient privilege.

The final countervailing factor to consider is the injury to the services offered by the program. This factor is of no consequence with regard to this motion since the application with respect to the program has been denied on procedural grounds.

In conclusion, the window period during which the victims would have faced uncertainty has long since passed. Indeed it had already passed when the State received its initial tip that the defendant had AIDS. The tip, although not substantiated as yet, certainly seems sufficiently specific to be the catalyst for the State to warn its victims, without disclosing the basis for their action, of their potential exposure to AIDS. If the defendant's medical records were released and it was determined that he is HIV positive, the next logical step would be for the victims to have themselves tested and treated, the same course of action available to them now without any violation of the privacy of medical records.

Therefore, a balancing of factors compels the conclusion that under these circumstances the physician/patient relationship outweighs the public interest and need for disclosure. Accord-

ingly, the State's motion for disclosure of the defendant's medical records from The Harbor and the Hudson County jail is hereby denied.